IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION



| | | |
|---|---|---|
| BNSF RAILWAY COMPANY, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | NO. 4:06-CV-705-A |
| | § | |
| BROTHERHOOD OF LOCOMOTIVE | § | |
| ENGINEERS & TRAINMEN, | § | |
| | § | |
| Defendant. | § | |

MEMORANDUM OPINION
and
ORDER

For the reasons stated in this memorandum opinion and order, the court has concluded that the motion for summary judgment filed by plaintiff, BNSF Railway Company, ("BNSF") should be granted to the extent provided below, that the counter-motion for summary judgment filed by defendant, Brotherhood of Locomotive Engineers & Trainmen, ("Brotherhood") should be denied, that Award No. 26337 (pertaining to the claim asserted by Brotherhood on behalf of K. R. Hughes) of the National Railroad Adjustment Board, First Division ("Board") should be vacated, and the controversy should be remanded to the Board for further consideration.

I.

## Proceedings Before, and Rulings of, the Board

Award No. 26337 resulted from a claim made by Brotherhood on behalf of K. R. Hughes ("Hughes"), an engineer employed by BNSF, pursuant to the collective bargaining agreement between BNSF and Brotherhood ("Agreement"). Brotherhood sought by its claim the restoration of Hughes's employment service, with pay for all time lost, seniority, vacation, and all other benefits unimpaired, in connection with discipline, in the form of dismissal, imposed by BNSF on Hughes on October 31, 2003, following a formal investigation conducted October 8, 2003, as part of the grievance process.

The facts leading to the dismissal are, briefly, as follows: On August 26, 2003, a train being operated by Hughes as the engineer derailed in the process of switching in the San Diego Yard. The cause of the derailment was a broken switch blade, but the extent of the damage and the distance traveled by the cars after derailment evidenced a speed limit infraction. Consequently, the entire train crew was required to submit to a drug/alcohol test pursuant to 49 C.F.R. § 219.301. As part of the test, Hughes was required to provide on August 26, 2003, a urine sample and to sign a testing form stating that the sample

2

was hers and that she did not adulterate it. The laboratory reported after testing the urine that it was not consistent with human urine. When informed of the test result, Hughes requested further testing, which was done on urine from the sample given on August 26, both by the original testing laboratory and by a different laboratory. The result of each of those tests was the same as the original test--not consistent with human urine. After a formal investigation was conducted by BNSF Superintendent of Operations Kevin C. McReynolds ("McReynolds") of the charge that Hughes had submitted a substituted or adulterated urine sample on August 26, which is functionally the equivalent to refusing to submit to a test under BNSF's rules, Hughes was found guilty of the charge and her employment with BNSF was terminated.

The Board chose not to make a ruling on the merit of the charge against Hughes, but, instead, ruled in her favor on the procedural ground that BNSF violated a rule in the collective bargaining agreement that the investigation be fair and impartial. In the Board's view, such a violation resulted from the same individual, McReynolds, filing the charges against Hughes, conducting the hearing, developing evidence supporting those charges, passing judgment on whether the hearing he conducted was fair and proper, determining whether the evidence

3

in the record of the hearing was adequate to prove the charges, and, finally, imposing the penalty. The Board described the basis of its award for Hughes as follows[1]:

> [T]he multiple-role objection is firmly grounded in the factual record and proves fatal to Carrier's decision to discharge this Claimant. It simply is incompatible with Rule 50's[2] guarantee of a fair and impartial Investigation to allow the same individual who filed the charges against the Claimant to conduct the hearing and develop evidence supporting his own charges, to pass judgement [sic] whether the hearing he conducted was fair and proper (including his refusal to call requested witnesses), to determine whether the evidence in the record of the hearing he conducted was adequate to prove the charges which he had filed and finally to impose the penalty. Based on the egregious violation of the due process mandate of Rule 50 in this case the dismissal action must be voided without reference to the merits.
>
> Based upon all of the foregoing, this Board concludes that the Claimant must be reinstated to her former position without loss of seniority or other rights and benefits, made whole in all respects and her record adjusted to remove all reference to the voided dismissal.

J.A. at 4 (footnote added).

---

[1] In the award the Board refers to BNSF as the "Carrier," Brotherhood as the "Organization," and Hughes as the "Claimant."

[2] Rule 50, which is a part of the collective bargaining agreement, provides, in pertinent part, that "[e]ngineers will not be dismissed or held out of service, or otherwise disciplined [with an exception not applicable in this case] without a fair and impartial investigation, if desired." J.A. at 304.

The carrier members[3] of the Board filed a dissent, noting that the procedure to which the majority objected has been upheld time and time again. They expressed their distress at the conduct of the Board in returning to service an engineer who "unquestionably and deliberately evaded a federal law, as well as the Carrier's Rules, by surreptitiously substituting her specimen with something that is 'not consistent with human urine.'" Id. at 5-5a. In conclusion, the dissenters submitted "that the Award is contrary to public policy, has no basis in reason or fact, and is unenforceable." Id. at 5a.

II.

The Contentions of the Parties

A. BNSF's Contentions.

This action was initiated by a complaint filed by BNSF on October 10, 2006, asking that the court vacate Award No. 26337 for the reasons that:

> (1) Because, according to BNSF, the Board implicitly found that BNSF had just cause to terminate Hughes, the

---

[3]The Board consisted of members selected by the labor organizations, an equal number of members selected by the carriers, and a referee. See 45 U.S.C. § 153, First (h), First division, and (1).

5

Board acted outside its jurisdiction when it reinstated Hughes based on an alleged procedural default.

(2) The Board's award violates a well-defined public policy against reinstating a former employee who willfully evaded a federal law and BNSF's rules by submitting an adulterated urine sample to a safety-sensitive position.

BNSF prays in its complaint that the court vacate the Board's award and reinstate BNSF's dismissal of Hughes.

BNSF filed its motion for summary judgment on January 31, 2007, asking the court summarily to vacate the Board's award and reinstate BNSF's dismissal of Hughes on the grounds that:

(1) The Board's decision to reinstate Hughes without further monitoring or punishment violates well-established public policy as evidenced by several Federal Railroad Administration ("FRA") regulations.

(2) The Board acted outside the scope of its contractual jurisdiction. BNSF's sub-grounds under this main ground are that: (a) by allowing Hughes to return to work with no discipline record was contrary to the terms of the Agreement, (b) the failure of the Board to impose the 90-day disqualification and a

6

Substance Abuse Professional ("SAP") treatment plan caused the award to be contrary to the language of the Agreement providing for suspension and indefinite lay-off for treatment/evaluation in cases such as Hughes's, and (c) the Board's findings of fact establish, according to BNSF, that the Agreement's standard for discharge was met.

B.   Brotherhood's Contentions.

Brotherhood filed an answer and counter-petition on September 7, 2006. By the counter-petition, Brotherhood prayed for an order of the court enforcing Award No. 26337 on the ground that the Board properly ruled that Hughes should be reinstated with full benefits because of the conduct of BNSF in causing McReynolds to serve in multiple roles in the investigation into Hughes's conduct and the discipline taken against Hughes.

On January 31, 2007, Brotherhood filed its motion for summary judgment urging summary adjudication enforcing the award of the Board. In response to the contentions made by BNSF for vacatur of the Board's award, Brotherhood argued in support of its motion that:

>    (1)   Public policy is not an accepted ground for review under the Railway Labor Act ("RLA"), 45 U.S.C. §§ 151-188.

7

(2) Even if public policy were a permissible ground for setting aside an award under the RLA, there is no public policy barring Hughes's reinstatement.

(3) Because BNSF did not obtain a valid determination that Hughes violated any policy against drug use, the award reinstating her did not violate public policy.

\* \* \* \* \* \*

The parties concur that the court should dispose of this case by a ruling on the motions for summary judgment and that there is no fact issue to be resolved by a fact finder.

III.

Analysis

The RLA applies to this case. The claims reached the Board for rulings pursuant to the authority of 45 U.S.C. § 153 First (i). Enforcement of the awards is governed by § 153 First (p), which authorizes the bringing of an action in a district court to enforce an order of the Board, and authorizes the court to make such order and enter such judgment as may be appropriate to enforce or set aside the order of the Board, with the proviso that "such order may not be set aside except for failure of the [Board] to comply with the requirements of [the RLA], for failure of the order to conform, or confine itself, to matters within the

8

scope of the [Board's] jurisdiction, or for fraud or corruption by a member of the [Board]." 45 U.S.C. § 153 First (p). BNSF's action to set aside the awards is governed by 45 U.S.C. § 153 First (q). The judicial authority, and limitations of authority, in an action brought under § 153 First (q) parallel the authority and limitations prescribed by § 153 First (p).

As the language of the statute suggests, board awards are reviewable by a district court on narrow grounds. Continental v. Int'l Bhd. of Teamsters, 391 F.3d 613, 617 (5th Cir. 2004). "Normally, an award is deemed to be within the Board's jurisdiction when it is grounded in the [collective bargaining agreement]." Id. "Unless a court concludes that the Board's interpretation of the contract is wholly baseless and completely without reason, the Board's interpretation must stand." Id. (quotation marks omitted). However, an award of the Board "settling a dispute with respect to the interpretation or application of a labor agreement must draw its essence from the contract and cannot simply reflect the arbitrator's own notion of industrial justice." Id. (quoting United Paperworkers Int'l Union v. Misco, Inc., 484 U.S. 29, 38 (1987)).

This court has been directed by the Fifth Circuit not to uphold a Board's decision "when it dispenses its own brand of

9

industrial justice outside the scope of an arbitration agreement." American Eagle Airlines v. Airline Pilots Ass'n, 343 F.3d 401, 405 (5th Cir. 2003) (quotation marks omitted). The Fifth Circuit has ruled that the court is "free to scrutinize an arbitrator's award to ensure that the arbitrator acted in conformity with the jurisdictional prerequisites of the collective bargaining agreement." Id. (quotation marks omitted). "Where an arbitrator exceeds his contractual authority, vacation or modification of the award is an appropriate remedy." Delta Queen Steamboat Co. v. Dist. 2 Marine Eng'g, 889 F.2d 599, 602 (5th Cir. 1989).

BNSF's jurisdictional argument is not directed to the Board's finding that the hearing before McReynolds was not fair and impartial. In its reply to Brotherhood's response to its motion for summary judgment, BNSF explained:

> Simply stated, BNSF is not asking the Court to reexamine the Board's finding that the hearing was not fair and impartial. Rather, BNSF is asking the Court to find that the Board exceeded its contractual authority and violated by public policy by reinstating Hughes without penalty after finding that the record showed that her urine sample was adulterated.

BNSF's Reply at 3. Put another way, BNSF has limited its contentions to (1) the contention that the Board found that the record showed that Hughes's urine sample was adulterated and (2)

the contentions that, having made such a finding, the Board had no authority under the Agreement to reinstate Hughes without penalty, and an award of the Board having that effect would be against public policy.

The court cannot agree with the first of BNSF's contentions. Brotherhood is correct in saying that the recitations in the award of the Board pertaining to the analyses of Hughes's urine sample are not findings of fact that the analyses were correct. The Board found that "[t]he record shows that there were no violations of testing protocol in the collection of [Hughes's urine sample] or the chain of custody," J.A. at 2, and that:

> On September 15, 2003, Carrier's Medical Review Officer (MRO) contacted the Claimant to discuss that testing laboratory urinalysis indicated the specimen she had provided showed readings "not consistent with human urine" i.e., a specific gravity of 1.005 and insufficient Creatinine level detected. At the Claimant's request the split sample was retested by both the original testing laboratory and a different laboratory, with the same results.

Id.

A more accurate interpretation of the language used by the Board is that the Board found that the reports of the laboratory testing showed that the urine specimen Hughes provided on August 26, 2003, was not consistent with human urine; but, such a finding is not the same as a finding that the laboratory reports

were accurate. However, this appears to be a nonissue, because a valid conclusion that the record of the hearing established without genuine dispute that the urine was adulterated or substituted would be the equivalent for the purposes of this analysis of a finding by the Board of that fact. The court concludes that the fact of adulteration or substitution of the urine sample is established without genuine dispute in the record of the hearing,[4] and that no rational Board could have failed to find from the record that Hughes's urine was adulterated.[5] That being so, the Board would have exceeded its jurisdiction if it had found otherwise. See Brotherhood of R.R. Trainmen v. Cent. Ga. Ry. Co., 415 F.2d 403, 411-12 (5th Cir. 1969) (saying that "[i]n the arbitration context, an award without foundation in reason or fact is equated with an award that exceeds the

---

[4]The testimony of witness Crespin taken at the hearing before McReynolds, and exhibits received at the hearing, leave no room for rational disagreement with the proposition that the urine specimen submitted by Hughes was not consistent with human urine. J.A. at 56, 59-61, 66, 68, 72-78, 129, 131-32, 136-38.

[5]The applicable regulations require a testing laboratory to consider the primary specimen to be adulterated if it determines that the physical characteristics of the specimen are outside the normal expected range for human urine. Procedures for Transportation Workplace Drug and Alcohol Testing Programs, 49 C.F.R. § 40.95(a)(3) (2006).